**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| CHRISTOPHER DAVID POLK, | : | |
| | : | CASE NO. 21-30203 |
| Debtor | : | |

**AMENDED DEBTOR'S DISCLOSURE STATEMENT
REGARDING DEBTOR'S PLAN OF REORGANIZATION**

Christopher David Polk (the "Debtor") provides this Disclosure Statement to all known holders of claims or interests in order to disclose information deemed by Debtor to be material, important, and necessary for the holder of a claim or interest to arrive at an informed decision when voting for acceptance or rejection of the Plan of Reorganization that has been filed by Debtor. This Disclosure Statement refers to the Debtor's Plan of Reorganization.

THIS DISCLOSURE STATEMENT CANNOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN OF REORGANIZATION, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDINGS INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON TAX OR OTHER LEGAL EFFECTS OF THE LIQUIDATION ON HOLDERS OF CLAIMS OR INTERESTS.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE BUSINESS OPERATIONS OR VALUE OF HIS PROPERTY) IS AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT. PROJECTIONS OF OPERATIONS AND STATEMENTS CONCERNING THE VALUE OF PROPERTY ARE ESTIMATES ONLY AND ARE NOT GUARANTEED. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN, WHICH ARE NOT CONTAINED IN THIS DOCUMENT, SHOULD NOT BE RELIED UPON BY ANY INTERESTED PARTY. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN APPRAISAL OR A CERTIFIED AUDIT, EXCEPT WHEN EXPRESSLY SO STATED. THE RECORDS KEPT BY THE DEBTOR IS NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE.

THE DESCRIPTION OF THE PLAN OF REORGANIZATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY, AND DOES NOT SUPERSEDE ANY PROVISIONS OF THE REORGANIZATION PLAN ITSELF.  EACH CREDITOR SHOULD READ, CONSIDER, AND CAREFULLY ANALYZE THE PLAN OF REORGANIZATION IN CONNECTION WITH THIS DISCLOSURE STATEMENT.  ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER THIS ENTIRE DISCLOSURE STATEMENT AND THE PLAN OF REORGANIZATION PRIOR TO SUBMITTING THEIR BALLOTS.

THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF ALL PARTIES, AND URGE THE CREDITORS TO VOTE IN FAVOR OF THE PLAN.  TO BE COUNTED, BALLOTS MUST BE COMPLETED, EXECUTED AND RECEIVED BY THE DATE ESTABLISHED BY THE BANKRUPTCY COURT, IN THE UNITED STATES BANKRUPTCY COURT, 433 CHERRY STREET, P.O. BOX 1957, MACON, GEORGIA 31202-1957, WITH A COPY TO WESLEY J. BOYER OF BOYER TERRY, LLC, 348 COTTON AVENUE, SUITE 200, MACON, GEORGIA 31201.  ANY BALLOT RECEIVED THAT IS EXECUTED BUT DOES NOT INDICATE ACCEPTANCE OR REJECTION WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE.

REFERENCE IS MADE TO PAGE 10 OF THIS DISCLOSURE STATEMENT FOR A DESCRIPTION OF THE MANNER IN WHICH BALLOTS ARE COUNTED AND THE CIRCUMSTANCES UNDER WHICH THE COURT MAY APPROVE THE PLAN EVEN THOUGH THE FILED BALLOTS ARE INSUFFICIENT TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AGENCY, NOR HAS ANY AGENCY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT IS SUBMITTED IN COMPLIANCE WITH THE DEBTOR'S OBLIGATIONS UNDER THE UNITED STATES BANKRUPTCY CODE TO PROVIDE ADEQUATE INFORMATION TO ENABLE EACH CREDITOR OR INTEREST HOLDER TO REACH AN INFORMED DECISION ON WHETHER TO ACCEPT OR REJECT THIS PLAN AND FOR NO OTHER PURPOSE.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN EITHER THIS DISCLOSURE STATEMENT OR THE PLAN AND SUCH APPROVAL SHALL NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT ANY OF THE REPRESENTATIONS FOR PURPOSES OF HEARINGS OR PROCEEDINGS DURING THE BANKRUPTCY CASE.

What follows is a detailed and candid discussion of the Debtor, his assets, and his prospects for continuing and making the payments proposed under his Plan of Reorganization. The plan specifies, in detail, what you, as a creditor of the Debtor will receive on account of your claim or interest if the plan is accepted.

The Debtor urges all creditors to read carefully this Disclosure Statement and the attached plan. Following your review of this Disclosure Statement, the Debtor urges you to make the decision to vote for and accept this plan, so that distributions can begin without further delay.

**HISTORY OF DEBTOR AND PROBLEMS LEADING TO THE REORGANIZATION CASE AND ANALYSIS OF FINANCIAL PROBLEMS.**

Debtor is in the forestry business and mortgage-lending business.

**IDENTITY OF AFFILIATES AND INSIDERS AND TRANSACTIONS WITH THE COMPANY**

I. **Identity of Affiliates and Insiders.**

One of the purposes of this disclosure statement is to disclose the identity and affiliations of any individual proposed to serve, after confirmation of a plan, as an officer, director, voting trustee, affiliate, or successor to the Debtor under the plan, and to disclose the insiders and affiliates and his relationship and transactions with the company. Reference is made to 11 U.S.C. § 101(2) for the definition of "affiliate" and 11 U.S.C. § 101(31) for a definition of "insider." The following individuals or entities may be considered "affiliates" or "insiders" of the company: Christopher David Polk is the only insider involved in this plan.

II. **Relationship of Insiders and Affiliates After Confirmation.**

Darren E. Bryant will remain in control of his assets following confirmation.

## ORGANIZATION OF PLAN

Debtor's Plan of Reorganization is divided into twelve articles. Article I specifies definitions which are used in the Bankruptcy Code and throughout the plan, and which apply to the plan. Article II divides claims and interests into classes. Article III specifies the effective date of the plan, and Article VI governs the treatment of claims that are not impaired, and that are deemed to have accepted the plan under the Bankruptcy Code. Article V defines the treatment of claims that are impaired under the Bankruptcy Code, and that must vote for the plan of reorganization. Article VI specifies how the company intends to implement the plan of reorganization and make the proposed payments. Article VII deals with executory contracts of the company. Article VIII defines the events of default under the plan. Article IX provides the effect of confirmation of the plan. Article X contains miscellaneous provision which apply throughout the plan, and Article XI requests that the Court approve the plan even though it is rejected by a class of creditors that is deemed impaired.

## SUMMARY OF PLAN

The plan is preferable to a liquidation under Chapter 7. Under the plan, creditors are paid in full with interest.

## EXPLANATION OF CLASSIFICATIONS AND TREATMENT OF EACH CLASS

Class 1 of the plan concerns claims of attorneys and professionals which are entitled to administrative priority and required to be paid in full under the Bankruptcy Code. Those claims shall be paid in cash in full at the later of: (a) such time as such claims are allowed or awarded by the Court or (b) the effective date. Total claims in those classes should not exceed $5,000.00.

Class 2 consists of allowed priority claims for post-petition transactions and debts arising in the normal course of business of Debtor incurred in the reorganization case through confirmation,

claims for expenses of administration not included in Class 1, and claims for costs and expenses payable to the United States Trustee or the Bankruptcy Court allowable as an expense of administration. Claims in Class 2 shall be paid in full in cash without any application or Order awarding payment of such claims. Such claims shall be paid at the later of: (a) the effective date, (b) the date such claims are allowed or awarded by the Court, or (c) such time as such claims become due according to ordinary terms.

The claims in Class 3 consist of allowed claims of governmental units entitled to priority under 11 U.S.C. § 507(a)(7) or secured status. The holder of the Class 3 claims shall retain any liens and shall be paid in full in equal amortized annual installments of principal and interest with interest calculated at 4% per annum. The amortization shall be over a period determined by the number of months between the effective date and 60 months following the petition date. Internal Revenue Service filed a secured claim for $23,014.00, and a priority claim of $86,977.76. Debtor scheduled Georgia Department of Revenue as having a priority claim of $7,637.00.

Class 4 consists of the secured claims held by Chase, to the extent allowed, collateralized by a first priority security interest in the Debtor's real property. The plan provides that the holder of the Class 4 claims shall settled and satisfied as follows: Debtor shall sell the collateral and pay the Class 4 creditor in full within 12 months of the effective date.

Class 5 consists of the secured claims held by Ally, to the extent allowed, collateralized by a first priority security interest in Debtor's 2015 Chevrolet Tahoe. The plan provides that the holder of the Class 5 claims shall be settled and satisfied as follows:

    a.)    The claim secured by a lien on the 2015 Chevrolet Tahoe shall be repaid the amount of its allowed secured claim, $7,500.00, in 7 equal annual amortized installments of

principal and interest payable on December 31ˢᵗ of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2022.

b.) The Class 5 claimant will retain its liens, if any, to the actual value of its collateral.

c.) In the event of an objection to this treatment by the Class 5 creditor, the Court shall determine the value of the secured claim before the hearing on confirmation. The amount so determined shall be amortized over the cramdown term and cramdown interest rate determined by the Court to be in compliance with 11 U.S.C. § 1129.

d.) Any amount determined to be unsecured shall be treated as a Class 8 claim.

Class 6 consists of the secured claims held by Ford Motor Credit, to the extent allowed, collateralized by a first priority security interest in Debtor's 2015 pickup. The plan provides that the holder of the Class 6 claims shall be settled and satisfied as follows:

a.) The claim secured by a lien on equipment shall be repaid the value of its allowed secured claim, $5,000.00, in 7 equal annual amortized installments of principal and interest payable on December 31ˢᵗ of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2019.

b.) The Class 6 claimant will retain its liens, if any, to the actual value of its collateral.

c.) In the event of an objection to this treatment by the Class 6 creditor, the Court shall determine the value of the secured claim before the hearing on confirmation. The amount so determined shall be amortized over the cramdown term and cramdown interest rate determined by the Court to be in compliance with 11 U.S.C. § 1129.

Class 7 consists of judgments or other liens not separately classified. If any, and to the extent allowed, they shall be settled and satisfied as follows:

a.) The claim determined to be secured shall be repaid its indebtedness in full and shall retain its liens up to the value of collateral, as determined by the Court, over the cramdown term at the cramdown rate, payable on December 31st of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2022.

b.) The Class 13 claimant will retain its liens, if any, to the actual value of its collateral.

c.) Any amount determined to be unsecured shall be treated as a Class 8 claim.

Class 8 consists of all allowed unsecured claims allowed under 11 U.S.C. § 1111(a) or under 11 U.S.C. § 502(a), if any, and claims allowed under 11 U.S.C. § 502(g), if any, and allowed deficiency claims, if any. The creditors holding claims in this class total approximately $2,355,949.10. These claims are reflected in Exhibit "A" hereto. These creditors will be paid .05% each year for ten consecutive years. Payments will be on an annual basis commencing on December 31, 2022. Debtor projects a 5% dividend to creditors in this class.

Class 9 consists of the Debtor's equity interest. All interests will be retained.

## EXECUTION OF THE PLAN

Article VI of the plan describes the mechanics of how the Debtor will comply with and carry out the plan.

I. **Bankruptcy recovery actions.**

The Debtor is, at this time, unaware of any bankruptcy recovery actions to be pursued, although all such claims are reserved by the Debtor pending further investigation.

II. **Disbursement.**

Money received from the liquidation of assets and income will be distributed pursuant to the plan.

III.  **Liquidation.**

The funds to be distributed in this plan are superior to dividends in a Chapter 7 case. However, the distributions are made much more quickly than is possible in Chapter 7.

### PROVISIONS REGARDING EXECUTORY CONTRACTS

The plan provides that all written leases and contracts under which the Debtor was performing as of the effective date, which have not already been accepted or rejected by the company pursuant to order of the Court or statute, and which have not been already fully performed by the company, are rejected by confirmation. .

### EVENTS OF DEFAULT

Article VIII deals with events of default under the plan.  This article provides that the failure of the Debtor to make the payments provided for under the plan or to comply in any respect with the plan will consist of a default, thereby enabling creditors in a class where a default exists to pursue their available remedies allowed under the Bankruptcy Code.

### EFFECT OF CONFIRMATION

Article IX of the plan provides that the effect of confirmation of this plan shall be in accordance with 11 U.S.C. § 1141, which provides in pertinent part as follows:

> (a) ... [T]he provisions of a confirmed plan bind the debtor ... any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
> (b) Except as provided in the plan or order confirming the plan, the confirmation of a plan vests all property of the estate and the debtor.
>
> (c) ... After confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interest of creditors, equity security holders, and general partners of the debtor.
> (d)(1) Except as otherwise provided ... in the plan, or in the order confirming the plan, the confirmation of a plan -

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this Title, whether or not –

    (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this Title;

    (ii) such claim is allowed under section 502 of this Title;

    (iii) the holder of such claim has accepted the plan.

Under the plan, Debtor will not receive a discharge because all claims will be paid in full.

## MISCELLANEOUS PROVISIONS

Article X contains miscellaneous but very important provisions. It provides that the Bankruptcy Court will retain jurisdiction to resolve questions of allowance of claims and other disputes arising under the Bankruptcy Code. All creditors and interested parties should carefully read these provisions.

## FEASIBILITY OF THE PLAN

One of the purposes of this disclosure statement is to review the Debtor's projections of his future earnings, which will enable his to make all payments provided under the plan. The Debtor believes that he will be able to meet the obligations set forth in this plan.

## TAX CONSEQUENCES

Debtor does not believe that confirmation will result in any material adverse tax consequences.

## THE ASSETS OF THE DEBTOR AND A LIQUIDATION ANALYSIS

I. **Real Estate.**

Debtor owns no equity in real estate. All real estate is fully encumbered. Debtor also owns no non-exempt assets or unencumbered assets.

II.  **Results in Liquidation.**

In a Chapter 7 liquidation, all assets will be sold by a commissioned trustee, or abandoned to secured creditors. The Debtor believes that in a Chapter 7 liquidation the trustee would likely cause a "fire sale" liquidation. A Chapter 7 trustee could also abandon its interest in the Debtor's property and allow senior secured creditors to foreclose. Therefore, Debtor believes this plan is more favorable than liquidation because it provides for greater certainty of payment of all claims.

Claims To Be Paid Before General Unsecured Creditors

As stated previously, zero is the total value of Debtor in liquidation. Post-petition operating expenses (United State Trustee's fees, etc.) of $1,000.00 and accrued professional fees would have administrative priority.

Chapter 7 expenses would consume additional assets. Chapter 7 trustee commissions and Chapter 7 attorney fees and accountant fees could be incurred. Debtor estimates no dividend.

If there were a dividend, Debtor estimates that it would be two years before a Chapter 7 dividend was made.

**PROJECTED INCOME**

Debtor's last monthly operating report is attached (without attachments) as Exhibit "B".

**SIGNIFICANT ORDERS ENTERED**

None.

**CONFIRMATION, VOTING, AND CONFIRMATION OF THE PLAN NOTWITHSTANDING A REJECTION**

Each class defined under the plan constitutes a separate class for voting on the plan. A class accepts when two-thirds in dollar amount and a majority in number of the allowed claims in a class vote to accept the plan. A single creditor holding multiple claims within a class shall be entitled to only one vote, for purposes of determining the number of accepting creditors. Only creditors

actually casting a ballot are counted in determining whether the class has accepted or rejected the plan.  Classes which are not impaired under the plan are deemed by law to have accepted the plan.  If all classes either accept the plan, or are not impaired under the plan, the plan will be confirmed by the Court, assuming that all requirements of 11 U.S.C. § 1129(a) are complied with.  That section includes, but is not limited to, requirements that the plan comply with the technical requirements of the Bankruptcy Code, that the plan be feasible, and that, if each holder will receive under the plan property of a value, as of the effective date of the plan, that is not less than the amount that the holder would receive or retain if the company were liquidated under Chapter 7 of this Title on such effective date.

Pursuant to 11 U.S.C. § 1129(b), the Court may confirm a plan notwithstanding the rejection by a class, and render the plan binding upon the non-accepting class, providing that the provisions of 11 U.S.C. § 1129(a) are complied with, and, with respect to secured claims, the holders of the secured claims retain the liens securing their claims, and receive in deferred cash payments at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the property securing such claim; or if such holder receives the "indubitable equivalent" of such claim.  With respect to unsecured claims, the plan may be confirmed over the rejection of a class of unsecured creditors if the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value as of the effective date of the plan equal to the allowed amount of such claim, or if the holder of any claim or interest that is junior to the class will not receive or retain under the plan on account of such junior claim any interest or any property.

## **CONCLUSION**

Debtor reiterates his appreciation of the patience, understanding, and in many cases, the active support of Debtor's creditors. Debtor urges you to vote to accept his Plan of Reorganization.

BOYER ‖ TERRY, LLC
By:

*/s/Wesley J. Boyer*
WESLEY J. BOYER
State Bar No. 073126
Attorney for Debtor
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(478) 742-6481
Wes@BoyerTerry.com