# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| CHRISTOPHER DAVID POLK, | : |
| | : CASE NO. 21-30203 |
| Debtor | : |

## SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION

COMES NOW, Christopher David Polk, Debtor and Debtor-in-Possession, as the proponent, and proposes the following Plan of Reorganization to all his known creditors and interest holders:

## ARTICLE I

## DEFINITIONS

1.1   The definitions contained in the Bankruptcy Code, 11 U.S.C. § 101, et. sec., are incorporated into this Joint Plan except as modified herein. The following terms, when used in this Plan of Reorganization, shall have the following meanings unless the context clearly requires otherwise:

(1)   Allowed Administrative Claim:  A claim enforceable against the Debtor or property of the Debtor under 11 U.S.C. § 503.

(2)   Allowed Claim:  A claim enforceable against the Debtor or property of the Debtor under 11 U.S.C. §1111(a) or 502.

(3)   Allowed Priority Claims:  A claim against the Debtor, which is enforceable against the Debtor or property of the Debtor under 11 U.S.C. §507, except claims allowable under 11 U.S.C. Section 507(a)(1).

(4) Allowed Secured Claim: The amount of each allowed claim against either Debtor secured by property of such Debtor or the estate which is equal to the amount stipulated as constituting the allowed secured claim between the Debtor and the holder of such claim, or the lesser of: (1) the total amount of the allowed claim, together with any post-petition interest or charges allowable under 11 U.S.C. § 506(b); (2) the value of any property of the Debtor or the estate with respect to which such creditor held a security interest or lien properly perfected as of November 6, 2017, to the extent deemed secured under 11 U.S.C. § 506(a).

(5) Allowed Unsecured Claims: Allowed unsecured claims means, except as hereinafter stated, all creditors of the Debtor having allowed claims which are not allowed secured claims or allowed priority claims, including but not limited to, creditors who have supplied pre-petition goods or services to Debtor, and creditors with claims arising from the rejection of executory contracts, and creditors with allowed unsecured deficiency claims.

(6) Assets: All of the assets of the bankruptcy estate of the Debtor and Debtor-in-Possession.

(7) Chapter 11: Chapter 11 of the United States Bankruptcy Code.

(8) Confirmation: Confirmation means the entry by the Court of an Order confirming this Plan of Reorganization in accordance with Chapter 11 of the Bankruptcy Code.

(9) Court: The United States Bankruptcy Court for the Middle District of Georgia, Macon Division, acting in this case, and/or the United States District Court for the Middle District of Georgia.

(10) Cramdown Term: Cramdown term shall mean the longest term approved by the Court at the cramdown hearing for the obligations in question and, to the extent applicable, the longest balloon payment.

(11)    Cramdown Interest Rate:  Cramdown interest rate shall mean the lowest interest rate approved by the Court for the obligation in question at the cramdown hearing.

(12)    Debtor and Debtor-in-Possession:  Christopher David Polk.

(13)    Deficiency Claim:  The extent to which any holder of an allowed secured claim is owed amounts by Debtor after treatment of such allowed secured claim as provided in this Plan, or the amount by which any holder of an allowed secured claim is owed amounts by Debtor after repossession, foreclosure, and sale of property securing such claim, to the extent enforceable under applicable law.

(14)    Effective Date:  Effective date for purposes of this Plan means the date the order confirming this Plan becomes final and non-appealable with no appeal pending.

(15)    Lien:  Lien means an unavoidable interest in property granted consensually or otherwise by way of security interest, pledge, mortgage, deed to secure debt, lease which is not a true lease, judgment, order of court, statute, or by any other manner recognized, to secure payment of an allowed claim.

(16)    Pre-Petition:  Pre-petition means that period of time on or before April 16, 2021.

(17)    Post-Petition:  Post-petition means the period of time after April 16, 2021.

(18)    Reorganization Case:   Reorganization case shall mean the case for the reorganization of the Debtor commenced by voluntary petition under Chapter 11 of Title 11 on April 16, 2021, now pending in this Court and styled In re:  Christopher David Polk, Chapter 11 Case No. 21-30203.

(19)    Reorganized Debtor:  The Debtor as reorganized pursuant to the terms of the Plan and the Order of Confirmation.

(20) Unclaimed property: Unclaimed property means any funds (together with any interest earned thereon) which are unclaimed on the 180th day following the date on which such funds are required by this plan to be distributed to the holders of allowed claims. Unclaimed property shall include: (a) checks (and the funds represented thereby which have been mailed to a proper address and returned as undeliverable without a proper forwarding and address), (b) funds for checks which have not been paid, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to which to mail or delivered because of the absence of a proper address to which to mail or deliver such property.

ARTICLE II

CLASSIFICATION OF CLAIMS AND INTEREST

2.1 Class 1 shall consist of allowed administrative claims for post-petition fees and expenses of administration for professional persons retained pursuant to orders of the Court, and incurred through confirmation, as allowed or awarded by the Court.

2.2 Class 2 shall consist of allowed priority claims for post-petition transactions and debts arising in the normal course of business of Debtor incurred in the reorganization case through confirmation, claims for expenses of administration not included in Class 1, and claims for costs and expenses payable to the United States Trustee or the Bankruptcy Court through the entry of a final decree allowable as an expense of administration, and post-petition claims of taxing authorities.

2.3 Class 3 shall consist of allowed priority claims of governmental units entitled to priority under 11 U.S.C. § 507(a)(8) or secured status under 11 U.S.C. § 506(a).

  2.3.1 Class 3.1 shall consist of the priority claim of Jill Polk, to the extent allowed. The plan provides as follows:

a.) Debtor believes that the past-due child support is paid in full. Jill Polk believes $43,243.88 is due in past due child support (the "Child Support Arrears") as further detailed in the "Order for Determination of Amounts" (the "Child Support Arrearage Order") entered by the Superior Court of Green County, State of Georgia (The "Superior Court") on March 4, 2020. Issues related to the amount and payment of past due child support will be reserved to Superior Court or other non-bankruptcy tribunal with competent jurisdiction and nothing in the Plan or Confirmation Order shall stay, bar, enjoin or anyway inhibit Jill Polk's, the Department of Family and Child Services', the Division of Child Support Services, or similar government or regulatory agencies' powers or rights regarding the same, their ability to collect the same or enforce any obligations related to past-due child support including seeking contempt, levying assets, taking collection actions, seeking attorney fees and costs of collection, or otherwise enforcing the same in any court or tribunal of competent jurisdiction. To the extent necessary, the automatic stay of bankruptcy shall be terminated upon entry of the Confirmation Order to allow Jill Polk, the Department of Family and Child Services, the Division of Child Support Services, or similar government or regulatory agencies to pursue any and all claims, rights and remedies regarding the Child Support Arrearage including seeking attorney fees related to the enforcement of the same in the Superior Court or otherwise.

b.) Within ten (10) days of the approval of the disclosure statement in this case, Debtor will pay $35,000.00 in lump sum payment to Jill Polk's counsel, Jones & Walden,

    LLC, to be held in the firm's IOLTA and paid to Debtor upon entry of the Confirmation Order to be applied to the Attorney's Fees Award.

c.)  Jill Polk asserts a balance owed on the Asset Division from the Divorce Judgment of $258,614.00 as of the Petition Date. (See POC 9, amended November 4, 2022). If Debtor timely complies with his obligations to Jill Polk under the Plan, the Assets Divisions will be satisfied with payment of $200,000.00 plus interest at the annual rate of 10% paid on the terms herein. Jill Polk will receive all proceeds from the sale of Debtor's real property commonly referred to as 1651 Lighthouse Circle, Greensboro, GA 30642 (the "Residence") after payment of all senior liens, a maximum of $100,000.00 payment to the Internal Revenue Service and customary closing costs but not less than a $75,000.00 minimum payment to be paid to Jill Polk at closing on the Residence. Debtor will list Residence within thirty (30) days from the approval of the disclosure statement and will authorize his real estate agent to provide bi-weekly updates to Jill Polk. Debtor will work in good faith to close on a sale of the Residence on or by October 31, 2023. Jill Polk may take and Debtor will grant a junior mortgage on Debtor's Residence e to secure The Attorney Fees Award (defined below) and Asset Division obligations. Debtor will execute the junior mortgage documents prepared by Jill Polk prior the Confirmation Hearing to be held in trust by Debtor's counsel. The fully executed junior mortgage documents shall be delivered by Debtor's counsel to Jill Polk upon confirmation of the Plan. In the event the Attorney Fees Award and Assets Division obligations are not paid in full from the Residence sale on or by October 31, 2023, Debtor will (i) continue to market the Real Property for sale with a qualified real estate agent and work in good

faith to sell the same on the rems herein and (ii) commence monthly payments of $2,500,00 per month (the "Monthly Payments") commencing no later than October 31, 2023 and continuing monthly until the Attorney Fees Award and Asset Division are paid in full, plus 10% annual interest accruing from October 31, 2023 until the date of payment in full.

d). Jill Polk will hold an Allowed Claim for attorney's fees of $55,000.00 (the "Attorney Fees Award"). The proceeds of the sale of the Residence will be applied first to the Attorney Fees Award and then to the Asset Division. If there is an unpaid balance on the Attorney Fees Award on October 31, 2023, the unpaid balance of the Attorney Fees Award will constitute a continuing obligation in addition to the Asset Division obligation, and amortized as provided in paragraph "c" with interest accruing at the annual rate of 10% and the Monthly Payments will be applied first to the Attorney Fees Award and then to the Asset Division.

e.) Life insurance in the amount of $250,000.00 may be acquired by Jill Polk on Debtor's life, at her expense. Debtor agrees to cooperate in the application process.

f.) Debtor will pay one-half of flight school and college expenses (under graduate and graduate school) for Spencer Polk and Jonathan Polk, including tuition, room and board, and flight time.

g.) Notwithstanding anything to the contrary in the Plan or otherwise, in the event of any default of Debtor's obligations under the Plan: (i) Jill Polk may immediately reopen the bankruptcy case (if closed) and, upon Jill Polk's request, Debtor's case will be converted to chapter 7, and (ii) the automatic stay and any discharge injunction or similar stay or injunction will be terminated, to the extent in effect,

so that Jill Polk may seek contempt and other enforcement of her claims in the their full outstanding amount without any discount and only reduced for payments actually received in the Superior Court or otherwise, including without limitation any rights and remedies available under State law, seeking attorney fees, contempt or sanctions. Jill Polk's claims, as detailed in proofs of claim 9 and 12, are excepted from any discharge granted to Debtor unless and until the terms of the Plan are fully and timely satisfied as to Jill Polk's claims; provided that, nothing in this Plan shall affect in any way Debtor's obligations to Jill Polk regarding the Child Support Arrears or the Child Support Arrearage Order and Debtor's completion of his obligations under the Plan as to Jill Polk will not and shall not discharge any Child Support Arrearage. In the event Jill Polk incurs attorney fees enforcing her claims following a breach of the Plan, Debtor will be liable for the same. Any and all liens and security interests of Jill Polk against Debtor's assets shall continue in full force and effect following the entry of the Confirmation Order.

2.4     Class 4 shall consist of the allowed secured claim of Chase collateralized by a first priority lien in the Debtor's residence at 1651 Lighthouse Circle, Greensboro, Georgia.

2.4.1   Class 4.1 shall consist of the priority claim of Jill Polk, to the extent allowed. The plan provides that the claim will be paid as provided in Class 3.1.

2.6     Class 6 shall consist of the allowed secured claim of Ford Motor Credit collateralized by Debtor's 2015 Ford pickup.

2.7     Class 7 shall consist of all claims, if any, purportedly collateralized by security interests or judgment liens against assets of the Debtor not otherwise classified in this plan.

2.8    Class 8 shall consist of all allowed unsecured claims allowed under 11 U.S.C. §1111(a) or under 11 U.S.C. §502(a), if any, allowed under 11 U.S.C. §502(g); and all allowed deficiency claims, if any.

2.9    Class 9 shall consist of the interests of the Debtor.

## ARTICLE III

## EFFECTIVE DATE OF THE PLAN

3.1    The effective date of this Plan shall be as defined in Section 1.1(14) above.

## ARTICLE IV

## TREATMENT OF CLAIMS NOT IMPAIRED UNDER THIS PLAN

4.1    Claims in Class 1 for post-petition fees and expenses of professional persons, as the same are allowed or awarded by the Court, shall be paid in cash in full at the later of: (a) such time as such claims are allowed or awarded by the Court or (b) the effective date.

4.2    Claims in Class 2 shall be paid in full in cash without any application or Order awarding payment of such claims.  Such claims shall be paid at the later of: (a) the effective date, (b) the date such claims are allowed or awarded by the Court, or (c) such time as such claims become due according to ordinary terms.  Fees owed the Bankruptcy Court or the U.S. Trustee incurred prior to the final decree will be paid when due.

4.3    The Class 9 interests shall be retained.

## ARTICLE V

## TREATMENT OF CLAIMS IMPAIRED UNDER THE PLAN

5.1    Claims in Class 3 (priority and secured tax claims), to the extent allowed, shall be settled and satisfied by payment of deferred cash payments, over a period not exceeding five (5) years after the petition date.  The claims shall accrue interest from the effective date at the rate of

4% per annum, and shall be paid in annual installments, commencing on December 31, 2019.

    5.1.1    Claims in Class 3.1 (Jill Polk – priority), to the extent allowed, will be paid as follows:

a.)    Debtor believes that the child support is paid in full. Jill Polk believes $43,243.88 is due in past due child support. Issues related to the amount and payment of past due child support will be reserved to State Court.

b.)    $35,000.00 in lump sum payment to Jill Polk at confirmation applied to attorney's fees or life insurance, at her election.

c.)    Asset division is established at $200,000.00. $75,000.00 minimum payment to Jill Polk from home sale. House listed at confirmation. Jill Polk may take a junior mortgage on Debtor's home to secure this agreement. Payments of $2,500,00 per month start at confirmation. Paid until the obligation, plus 10% interest is paid in full.

d).    Jill Polk will hold a claim for attorney's fees of $50,000.00. Any unpaid balance will be added to $200,000.00 asset division obligation, and amortized as provided in section c.

e.)    Life insurance in the amount of $250,000.00 may be acquired by Jill Polk on Debtor's life, at her expense. Debtor agrees to cooperate in the application process.

f.)    Debtor will pay one-half of flight school and college expenses for Spencer Polk and Jonathan Polk, including tuition, room and board, and flight time.

    5.2    The claims in Class 4 (Chase), if any and to the extent allowed, shall be settled and satisfied as follows: Debtor shall sell the collateral and pay the Class 4 creditor in full within 12 months of the effective date.

    5.2.1 Claims in Class 4.1 (Jill Polk – secured), to the extent allowed, will be paid as provided in Class 3.1.

  5.3 The claims in Class 5 (Ally), if any and to the extent allowed, shall be settled and satisfied as follows:

    a.) The claim secured by a lien on the 2015 Chevrolet Tahoe shall be repaid the amount of its allowed secured claim, $11,000.00, in 7 equal annual amortized installments of principal and interest payable on December 31st of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2021.

    b.) The Class 5 claimant will retain its liens, if any, to the actual value of its collateral.

    c.) $5,000.00 is determined to be unsecured shall be treated as a Class 8 claim.

  5.4 The claims in Class 6 (Ford Motor Credit), if any and to the extent allowed, shall be settled and satisfied as follows:

    a.) The claim secured by a lien on the 2015 Ford pickup shall be paid the value of its allowed secured claim, as determined by the Court, in 7 equal annual amortized installments of $5,000.00 payable on December 31st of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2021.

    b.) The Class 6 claimant will retain its liens, if any, to the actual value of its collateral.

    c.) In the event of an objection to this treatment by the Class 6 creditor, the Court shall determine the value of the secured claim before the hearing on confirmation. The amount so determined shall be amortized over the cramdown term and cramdown interest rate determined by the Court to be in compliance with 11 U.S.C. § 1129.

  5.5 The claims in Class 7 (judgment or other liens not separately classified), if any and to the extent allowed, shall be settled and satisfied as follows:

a.) The claim determined to be secured shall be repaid its indebtedness in full and shall retain its liens up to the value of collateral, as determined by the Court, over the cramdown term at the cramdown rate, payable on December 31st of each year, with interest calculated at 5.0% per annum, commencing on December 31, 2021.

b.) The Class 7 claimant will retain its liens, if any, to the actual value of its collateral.

c.) Any amount determined to be unsecured shall be treated as a Class 8 claim.

5.6 Each Class 8 claimant shall receive payment as follows: Class 8 shall consist of all allowed unsecured claims and deficiency claims, if any. The creditors holding claims in this class total approximately $2,355,949.10. These claims are reflected in Exhibit "A" to the disclosure statement. These creditors will be paid .05% of the claim amount each year for ten consecutive years. Payments will be on an annual basis commencing on December 31, 2022. Debtor projects a 5% dividend to creditors in this class. The value of property to be distributed under the plan is not less than the disposable income of Debtor (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the five-year period beginning when the first payment is due under this plan.

## ARTICLE VI

### IMPLEMENTATION OF PLAN AND SOURCE OF PAYMENTS TO CREDITORS

6.1 All payments due under this Plan shall be made from the Debtor's post-petition earnings and from the Debtor's assets.

6.2 After confirmation, Debtor may retain Boyer Terry LLC as legal counsel, with post-confirmation fees to be paid in the ordinary course of business without any applications or Court approval.

6.3 On or about the effective date, the reorganized Debtor will satisfy claims in Classes 1 and 2.

6.4     No payment shall be made on any claim that is disputed (an objection to such claim is filed and not resolved by Final Order).  Disputed claims shall receive no distribution until the claim is resolved by Final Order.  Upon the entry of such Final Order (unless such order provides for contrary treatment), such claimant shall be entitled to receive a distribution equal to the amount of the distribution(s) which he would have received in prior distributions if he had held an allowed claim in the Allowed Amount at such date (a "catch-up" distribution).

6.5     The Debtor shall be deemed to continue to engage in business after confirmation of this plan.

6.6     All payments shall be mailed to creditors at the address shown in the schedules, proof of claim, or other address provided in writing to the Debtor.  Funds undeliverable or unclaimed property shall be property of the Debtor pursuant to 11 U.S.C. § 347.

## ARTICLE VII

## REJECTION OF EXECUTORY CONTRACTS

7.1     All executory contracts and leases shall be assumed unless rejected prior to confirmation.

7.2     The Court shall determine the amount of any claim arising from any rejection of an executory contract heretofore made by the Debtor, if any, and any such claim shall be included as a Class 9 creditor, as the case may be, provided that application for allowance of all claims arising out of any such rejection shall be filed within 30 days after any initial order confirming this Plan.  It shall not be necessary for a creditor having previously filed a claim specifically setting forth damages arising due to any rejection of an executory contract to file a second claim, but it shall be necessary for a claimant filing a general claim to file a claim under this section for any damages claimed by virtue of the rejection of an executory contract.

## ARTICLE VIII

## EVENTS OF DEFAULT

8.1 The occurrence of any of the following shall constitute an event of default:

(a) Failure by the Debtor to make the payments provided for in this Plan;

(b) Failure by the Debtor to comply with any covenants set forth in this Plan.

8.2 An event of default with respect to a class under this plan shall enable the class to enforce the terms of the plan in any court having jurisdiction over the Debtor.

## ARTICLE IX

## EFFECT OF CONFIRMATION

9.1 The effect of confirmation of this Plan shall be in accordance with 11 U.S.C. §1141. Debtor shall be discharged from the claims of any creditor holding an allowed claim under 11 U.S.C. §§ 1111 or 502, including any claim of any creditor, which was scheduled as disputed, contingent or unliquidated, and such creditor did not file a proof of claim on or before the bar date (for non-governmental entities) previously established.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1 Until all claims have been allowed and disputes resolved, the Court will retain jurisdiction for, including but not limited to, the following purposes:

(a) The classification of any claim of any creditor and the re-examination of claims which have been allowed for the purposes of voting, and determination of such objections as are filed to creditors' claims. The failure of the Debtor to object to any claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to or to re-examine any

claim in whole or in part.

(b) Determination of all questions and disputes regarding title to, security interest in, liens against, assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of confirmation, between the Debtor/Debtor-in-Possession and any other party, including but not limited to, any right of the Debtor to recover assets or money pursuant to the provisions of the United States Bankruptcy Code or other laws. The Debtor may assert actions against any person or entity, including creditors, to recover money or property under the provisions of the Bankruptcy Code or other laws after the confirmation of this Plan, and the Court shall retain jurisdiction for such purposes.

(c) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency of this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

(d) The modification of this Plan after confirmation pursuant to the United States Bankruptcy Code or the Rules of Bankruptcy Procedure applicable to such proceedings.

(e) To enforce and interpret the terms and conditions of this Plan, other than defaults in payment.

(f) Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor or Debtor-in-Possession.

(g) Entry of an order concluding and terminating this case.

(h) The Court shall not retain jurisdiction over defaults under the plan.

10.2    The Debtor may pre-pay any obligations under this Plan and any obligation cured and reinstated under the plan without any penalty or charge of unaccrued interest.

10.3    Disputed creditors may not vote except to the extent their claims are allowed, compromised or estimated under Fed. R. Bankr. P. 3018.

10.4    The Debtor may, at their option, surrender collateral in satisfaction of secured claims at any time prior to the effective date.

10.5    All ballots shall be filed as follows:

Clerk, United State Bankruptcy Court  
Middle District of Georgia  
PO Box 1957  
Macon, Georgia 31202  

WITH A COPY TO:

Wesley J. Boyer, Esq.  
Boyer Terry LLC  
348 Cotton Avenue, Suite 200  
Macon, Georgia  31201  

Any ballot not filed in accordance with this paragraph shall not be counted for purposes of determining the acceptance or rejection of this Plan by any class of claims or interest.

10.7    Confirmation of the plan shall discharge the Debtor, except to the extent this plan provides for payment.

10.8    Notwithstanding the closing of this case, the Debtor may propose amendments or modifications of this plan at any time prior to or subsequent to confirmation in accordance with the United States Bankruptcy Code and applicable Rules of Bankruptcy Procedure.  If this case has been closed, such modification may be approved and binding upon the holders of all claims provided for under this Plan, without opening the bankruptcy case as follows:

(a)    The reorganized Debtor shall give written notice of the proposed modification to the remaining holders of all claims provided for under this plan that have not been paid in full at the time of such modification.  Such notice shall provide that the holders of such

claims may approve or reject the modification within forty-five days from the date of the mailing of such notice. The Debtor shall mail a ballot to each such claimant, with such notice.

(b) Any ballots which are completed and returned within such forty-five day period shall be counted in determining whether creditors have approved such modification. Such modification shall be deemed accepted and binding upon all remaining claimants in any class which accepts such modification by a total of 51% of the claims voting on account of such modification, provided such voting claims constitute two-thirds of the outstanding remaining debt in such class.

(c) If such modification is so accepted, the modification shall be deemed contractually binding upon all members of the affected class.

(d) Only members of any class of claims affected by such modification shall be entitled to vote.

10.9 Debtor expressly reserves all claims against others, counterclaims, defenses to claims, setoffs and recoupments. The failure to object to any claim for purposes of voting, shall not be a waiver of right to object to the claim or to seek recoveries from the claimant.

10.10 This plan incorporates by reference the disclosure statement. In the event of a conflict between the provisions of the plan and the disclosure statement, the provisions of the plan shall control.

## ARTICLE XI

## CONFIRMATION NOTWITHSTANDING REJECTION BY CLASSES

11.1 To the extent one or more classes reject this Plan, Debtor move the Court to confirm this Plan notwithstanding such rejection pursuant to 11 U.S.C. § 1129(b). Hearings under § 1129(b), if any, may be held at the time of the confirmation hearing scheduled by the Court without any additional notice.

BOYER ‖ TERRY LLC
By:

*/s/Wesley J. Boyer*
WESLEY J. BOYER
State Bar No. 073126
Attorney for Debtor
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(478) 742-6481
Wes@BoyerTerry.com